S12G0703. THE STATE v. OGILVIE.
(734 SE2d 50)

NAHMIAS, Justice.

We granted certiorari in this case to consider whether the Court of Appeals properly stated and applied the law governing accident and proximate cause in a "strict liability" offense. See *Ogilvie v. State*, 313 Ga. App. 305 (721 SE2d 549) (2012). We conclude that it did not and reverse its judgment.

1. Appellee Shirley Ogilvie struck and killed a seven-year-old boy with her car as she drove through a crosswalk while the child was

crossing the street.[1] Ogilvie was convicted of second degree vehicular homicide, see OCGA § 40-6-393 (c), based on her failure to stop for a pedestrian in a crosswalk, see OCGA § 40-6-91 (a). The trial court had declined to give Ogilvie's requested jury charge on the defense of accident. On appeal, she contended that the accident charge was authorized by her testimony that she could not stop before hitting the child because he ran across the street in front of her car, giving her only a second or two to avoid hitting him.

The Court of Appeals began its discussion of Ogilvie's contention by stating that there is "no element of criminal intent for the strict liability offenses contained in OCGA Title 40, Chapter 6, Uniform Rules of the Road." *Ogilvie*, 313 Ga. App. at 308. The court then said that the defense of accident is available in strict liability offenses because "[o]ne of the requirements for application of this defense is a lack of criminal intent, and a strict liability offense, by its very nature, involves a lack of criminal intent." Id. at 309. The court rejected the

> State's claim that Ogilvie's defense was "one of lack of proximate cause and not accident." This argument overlooks that defendant can be entitled to *both* a proximate cause defense and an accident defense. See, e.g., *Mitchell v. State*, 255 Ga. App. 585, 591-592 (6) (565 SE2d 889) (2002) (trial court's charges on accident and proximate cause proper and adjusted to evidence in case when boat passenger jumped in front of approaching boat on collision course with passenger's boat). An accident charge should be given "if there is evidence that the defendant could not have avoided the collision due to circumstances beyond his control." *Moore v. State*, [258 Ga. App. 293, 294-295 (1) (574 SE2d 372) (2002)]. Since the facts submitted at Ogilvie's trial support the theory that she could not avoid hitting the child "due to circumstances beyond [her] control," id., the trial court erred by refusing to give the accident charge.

*Ogilvie*, 313 Ga. App. at 310-311 (emphasis in original). The Court of Appeals held that the failure to give the accident charge was harmful and reversed Ogilvie's convictions. See id. at 311-313. We granted certiorari.

2. (a) The Court of Appeals premised its reasoning on the proposition that there is no criminal intent element for the "strict

---

[1] A detailed account of the evidence is provided in the Court of Appeals's opinion. See *Ogilvie*, 313 Ga. App. at 305-307.

liability" traffic offenses set forth in Chapter 6 of Title 40 of the Georgia Code. That premise is incorrect.

Violations of Chapter 6's Uniform Rules of the Road are crimes. OCGA § 40-6-1 says, "It is unlawful and, unless otherwise declared in this chapter with respect to particular offenses, it is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this chapter," and OCGA § 16-1-3 (9) defines a "misdemeanor" as "any crime other than a felony." See also OCGA § 17-10-3 (a) (1) ("Except as otherwise provided by law, every crime declared to be a misdemeanor shall be punished as follows: (1) By a fine not to exceed $1,000.00 or by confinement in the county or other jail, county correctional institution, or such other places as counties may provide for maintenance of county inmates, for a total term not to exceed 12 months, or both . . . ."). Because the General Assembly has plainly said that these traffic offenses are misdemeanor crimes, they must contain the elements required to constitute a crime in Georgia as defined in OCGA § 16-2-1 (a): "A 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence."

Criminal intent does not always equate to mental fault, guilty knowledge, or purposeful violation of the law. In *Hoffer v. State*, 192 Ga. App. 378 (384 SE2d 902) (1989), the Court of Appeals correctly identified the criminal intent required for the traffic offenses at issue. The defendant there contended that, to be convicted of running a red light, the State had to prove that he had the *specific* intent to run the red light. The court, however, rejected the view that the State must prove that the defendant "intentionally drove through a red light, or even that [he] knew that the light was red." Id. at 379-380. Instead, the court explained, the State must prove only *general* criminal intent, which is " 'simply the intent to do the act which results in the violation of the law, and not the intent to commit the crime itself.' " Id. at 380 (citing *Nelson v. State*, 27 Ga. App. 50, 52-53 (107 SE 400) (1921)). The *Hoffer* court thus correctly concluded that, unless the particular provision indicates otherwise,[2] the traffic offenses defined in Chapter 6's Rules of the Road are "strict liability" offenses, meaning that they can be committed without a culpable mental state. See id. Accord *Cromwell v. State*, 283 Ga. 247, 249-250 (657 SE2d 195)

---

[2] Some offenses set forth in Chapter 6 are not strict liability offenses but contain a specific intent or fault element. See, e.g., OCGA § 40-6-10 (c) ("Any person who knowingly makes a false statement or certification under Code Section 40-5-71 or this Code section shall be guilty of a misdemeanor . . . ."); OCGA § 40-6-397 (a) ("A person commits the offense of aggressive driving when he or she operates any motor vehicle with the intent to annoy, harass, molest, intimidate, injure, or obstruct another person . . . ."). We do not address those offenses in this opinion.

(2008) (holding that the trial court correctly charged the jury, with regard to a Chapter 6 offense, that " 'criminal intent must be proved by the state in every prosecution, and that criminal intent does not mean an intention to violate the law or to violate a penal statute, but simply means to intend to commit the act which is prohibited by statute' " (citation omitted)); *Goethe v. State*, 294 Ga. App. 232, 236 (668 SE2d 859) (2008) (same); *Queen v. State*, 189 Ga. App. 161, 163 (375 SE2d 287) (1988) (explaining that "certain 'strict criminal liability' motor vehicle safety statutes . . . can be violated . . . without a showing of mens rea or guilty knowledge on the part of the violator"). See also *People v. Rostad*, 669 P2d 126, 129 (Colo. 1983) ("[T]he minimal requirement for a 'strict liability' offense is proof that the proscribed conduct was performed voluntarily — i.e., that such act must be the product of conscious mental activity involving effort or determination.").

Thus, "strict liability" traffic offenses are not offenses with no criminal intent element. They do not require the specific intent or wrongful purpose that is an element of other crimes, but they do require the defendant to have voluntarily committed the act that the statute prohibits, which typically involves driving at a particular time and place (e.g., through a red light, see OCGA § 40-6-20 (a)) or in a particular way (e.g., too fast, see OCGA § 40-6-181).

(b) OCGA § 16-2-2 says that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." This accident defense applies where the evidence negates the defendant's criminal intent, whatever that intent element is for the crime at issue. Accordingly, a jury charge on the defense of accident to a strict liability traffic offense is available only where there is evidence, however slight, that the defendant did not voluntarily commit the prohibited act. Contrary to Ogilvie's assertion, this does not eliminate the accident defense in traffic offense cases. The defense must be based, however, on evidence that the prohibited act was committed involuntarily, for example, because of an unforeseeable physical ailment or external force. Cf. *Smith v. State*, 250 Ga. App. 532, 536-537 (552 SE2d 499) (2001) (holding that a justification instruction was required on a failure to maintain lane charge based on evidence that the defendant accelerated and hit a utility pole to avoid an armed attack); *Sapp v. State*, 179 Ga. App. 614, 615 (347 SE2d 354) (1986) (holding that a charge on accident was required in a prosecution for obstructing a police officer based on the defendant's testimony that she obstructed the officer when she fell due to illness).

(c) In this case, Ogilvie was charged with violating OCGA § 40-6-91 (a), which directs that

> [t]he driver of a vehicle shall stop and remain stopped to allow a pedestrian to cross the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching and is within one lane of the half of the roadway on which the vehicle is traveling or onto which it is turning.

A charge on accident is appropriate for this crime only when there is evidence that the defendant did not voluntarily drive into the crosswalk instead of stopping for a pedestrian who was located in the statutorily protected area. At trial, Ogilvie did not dispute that she voluntarily drove into the crosswalk and struck the child there, so a charge on accident was not warranted for the OCGA § 40-6-91 (a) violation or for the OCGA § 40-6-393 (c) violation, for which the crosswalk offense served as the predicate offense.[3]

The Court of Appeals concluded that Ogilvie's testimony that she could not avoid hitting the child because he ran across the street in front of her warranted an accident charge. See *Ogilvie*, 313 Ga. App. at 309-311. If Ogilvie had been indicted for a crime that required her to have intentionally or maliciously hit the child, like murder, see OCGA § 16-5-1, this evidence would have supported an accident instruction, because it would tend to show that she did not act with the requisite "criminal . . . intention." OCGA § 16-2-2. As explained above, however, that was not the type of intent required to commit a strict liability traffic offense.[4]

---

[3] OCGA § 40-6-393 (c) states:
> Any person who causes the death of another person, without an intention to do so, by violating any provision of this title other than subsection (a) of Code Section 40-6-163, subsection (b) of Code Section 40-6-270, Code Section 40-6-390 or 40-6-391, or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the second degree when such violation is the cause of said death and, upon conviction thereof, shall be punished as provided in Code Section 17-10-3.

[4] To the extent other cases hold that an accident charge is required in similar circumstances, they are disapproved. See, e.g., *Moore v. State*, 258 Ga. App. 293, 294-295 (574 SE2d 372) (2002) (holding that, in a prosecution for driving under the influence and vehicular homicide, an accident charge was required based on some evidence that the defendant could not have avoided hitting a truck in front of him, which caused his passenger's death, because the truck decelerated so rapidly); *Morris v. State*, 210 Ga. App. 617, 618 (436 SE2d 785) (1993) (holding that, in a prosecution for driving under the influence and vehicular homicide, the trial court erred in failing to charge on accident because there was some evidence that the defendant ran a stop sign, following which he struck another vehicle and killed its occupant, because it was difficult to see the stop sign because of fog).

(d) Ogilvie's testimony did, however, warrant a jury charge on proximate cause for the crimes alleged against her. OCGA § 40-6-91 (b), which the trial court charged in this case, provides that "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield." And OCGA § 40-6-393 (c) says that "[a]ny person who causes the death of another person, without an intention to do so, by violating any provision of this title other than . . . commits the offense of homicide by vehicle in the second degree *when such violation is the cause of said death* . . . ." (Emphasis added.)

In *State v. Jackson*, 287 Ga. 646 (697 SE2d 757) (2010), we surveyed Georgia case law and concluded that the term "cause[ ]" as used in the felony murder statute means proximate cause, explaining that "proximate cause is the standard for criminal cases in general." Id. at 648. We noted that the vehicular homicide statutes, including OCGA § 40-6-393 (c), use causation language that is similar to the felony murder statute and that, "to the extent those statutes have been interpreted by Georgia's appellate courts, once again the term 'cause' has been regularly construed as requiring proximate causation." Id. at 650-651 & n. 3. "Proximate causation imposes liability for the reasonably foreseeable results of criminal . . . conduct if there is no sufficient, independent, and unforeseen intervening cause." Id. at 654.

In this case, Ogilvie's testimony that she could not avoid hitting the child because he unexpectedly ran across the street in front of her, giving her only a second or two to stop, presented a proximate cause issue for the jury to decide. In the language of OCGA § 40-6-91 (b), her evidence raised the issue of whether the child "suddenly" ran from "a curb or other place of safety . . . into the path of [Ogilvie's] vehicle which [was] so close that it [was] impractical for [her] to yield." In the language of OCGA § 40-6-393 (c), the evidence raised the issue of whether Ogilvie's alleged violation of OCGA § 40-6-91 was "the cause of [the child's] death." The trial court committed no error in this regard, however, giving the jury a full charge on proximate cause, in addition to charging the relevant language of those two statutes.

(e) In sum, Ogilvie's defense at trial was not that she acted involuntarily, and thus without the required criminal intent, when she drove into the pedestrian crosswalk where her car struck the child. Her defense was that the act (or failure to act) of another person — the child in running into the crosswalk (or the crossing guard in failing to stop him) — was the proximate cause of the deadly collision. That is a proximate cause defense, not an accident defense, regardless of how she tried to characterize it. The trial court therefore was

not required to give an accident instruction, and the properly charged jury rejected her proximate cause defense.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 5, 2012.

*Sherry Boston, Solicitor-General, Jennifer E. Stolarski, Wystan B. Getz, Assistant Solicitors-General*, for appellant.
*Jackie G. Patterson*, for appellee.